**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MILLEPEDE MARKETING LIMITED,<br><br>       Plaintiff,<br><br>       v.<br><br>ANDREW J. HARSLEY,<br><br>and<br><br>RAPSTRAP LIMITED,<br><br>       Defendants. | Civil Action No. 12-cv-00672 (BAH)<br>Judge Beryl A. Howell |

<u>**MEMORANDUM OPINION**</u>

      This case involves a dispute among United Kingdom parties over the ownership of a United States patent for the design of a flexible "tie strip" used apparently to close items such as garbage bags. The plaintiff, Millepede Marketing Limited, a United Kingdom company, brought this action against its former employee, defendant Andrew J. Harsley, a citizen and current resident of the United Kingdom, and his privately-held company, Rapstrap Limited ("Rapstrap"), a United Kingdom company, alleging in a two-count complaint that defendant Harsley breached an implied contract with, and fiduciary duty to, the plaintiff when he failed to assign all right, title, and interest in inventions disclosed and claimed in United States Patent No. 7,704,587 ("'587 Patent") for "tie strips," to the plaintiff, and instead assigned the ownership rights to his newly formed company, Rapstrap. Complaint ("Compl."), ECF No. 1. Both of the defendants have moved, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss this action based on the plaintiff's failure to establish the subject matter jurisdiction of this Court. Def. Harsley's Mot. to Dismiss, ECF No. 17; Def. Rapstrap's Mot. to Dismiss, ECF No. 14.

For the reasons stated below, the defendants' motions are granted due to the plaintiff's failure to establish that this Court has subject matter jurisdiction under 28 U.S.C. § 1338(a).  The plaintiff also argues that this Court has common law equity jurisdiction over these claims, but this is not a legally viable basis for the exercise of jurisdiction in the instant case.  Pl.'s Opp'n to Defs.' Motions to Dismiss ("Pl.'s Opp'n"), ECF No. 19, at 10.  As explained in more detail below, this case must be dismissed.[1]

## I.   BACKGROUND

### A.   Defendant Harsley's Assignments of Patent Rights

On June 24, 1994, defendant Harsley filed a patent application in the United Kingdom, serial no. 9412759 ("1994 UK Patent Application"), for an "integrally formed tie strip made of a semi-rigid resiliently bendable material."  Compl. ¶ 12.  The next year, in 1995, defendant Harsley and another person founded Millepede Cable Ties Limited, and defendant Harsley assigned all of his ownership rights in the 1994 UK Patent Application to that newly created company.  Id. ¶¶ 13-14.

Later the same year, on June 23, 1995, defendant Harsley filed International Patent Application No. PCT/GB95/01487 ("1995 International Patent Application"), which claimed priority to the 1994 UK Patent Application.[2]  Id. ¶ 15.  Again, defendant Harsley assigned all the ownership rights in the 1995 International Patent Application to Millepede Cable Ties Limited in an agreement dated September 10, 1995.  Id. ¶ 16.  In this agreement, defendant Harsley also

---

[1] Since this case is dismissed for lack of subject matter jurisdiction, the Court does not reach the defendants' other arguments to dismiss the complaint on grounds of *forum non conveniens* or for failure to state a claim against Rapstrap, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Def. Rapstrap's Mem. in Supp. of Mot. to Dismiss ("Rapstrap's Mem."), ECF No. 14-1, at 6-8; Def. Harsley's Mem. in Supp. of Mot. to Dismiss ("Harsley's Mem."), ECF No. 17-1, at 5-7.

[2] The complaint does not indicate whether the 1994 UK Patent Application or the 1995 International Patent Application resulted in the issuance of a patent.

assigned "'right, title, and interest in the Invention throughout the world;' and 'the right to apply for patent or other protection in respect of the Invention in all parts of the world whether by way of national or supranational patents and whether or not claiming the priority date(s) of the United Kingdom Application on the International Application.'"  *Id.*

On March 3, 1997, defendant Harsley filed Patent Application serial no. 08/765,560 ("1997 U.S. Patent Application") in the United States Patent and Trademark Office.  *Id.* ¶ 17. The plaintiff alleges that this application claimed priority to both the 1994 UK Patent Application and the 1995 International Patent Application.  *Id.*  The next year, on August 25, 1998, defendant Harsley assigned all of his ownership rights in the 1997 U.S. Patent Application to Millepede Cable Ties Limited.  *Id.* ¶ 18.  Shortly after this assignment was made, this application issued as United States Patent No. 5,799,376 ("'376 Patent") on September 1, 1998. *Id.* ¶ 17.

### B.      Creation of Millepede International Limited

In February 2001, Millepede International Limited was formed "to acquire patents and other intellectual property rights – relating both to the Millepede Mille-Tie fastener designs and to Continuous Injection Moulding technology – from Millepede Cable Ties Limited."  *Id.* ¶ 19. Millepede Cable Ties Limited assigned all its ownership rights in the '376 patent to Millepede International Limited on September 4, 2001.  *Id.* ¶ 20.  Defendant Harsley was the single largest shareholder of Millepede International Limited and "part of the 'senior management' of Millepede International Limited, 'Research & Development, Millepede Marketing Ltd. (UK)'." *Id.* ¶ 19.

The plaintiff Millepede Marketing, a majority-owned subsidiary of Millepede International Limited, hired defendant Harsley as "Technical Director" to "invent improvements

on the Millepede Mille-tie depicted in the '376 patent." *Id.* ¶¶ 21-23.  Defendant Harsley was

employed by the plaintiff in this capacity and receiving "a regular salary . . . from at least

September 30, 2001 to March 31, 2004." *Id.* ¶¶ 22, 30.

### C.     Disputed United States Patent

On June 10, 2003, while still employed by the plaintiff, defendant Harsley filed United

Kingdom Patent Application No. 0313319.6 ("2003 UK Patent Application"), "which was

directed to a very narrow improvement to the Millepede Mille-Tie depicted in the '376 patent."

*Id.* ¶ 23.  Less than one year later, on April 30, 2004,[3] defendant Harsley ceased being employed

by the plaintiff, although he apparently continued to be a majority shareholder in the plaintiff's

parent company.  *Id.* ¶¶ 24, 37.

Nineteen months after he left the plaintiff's employment, on December 9, 2005,

defendant Harsley filed patent application serial no. 10/560,137 ("2005 U.S. Patent

Application") in the United States Patent and Trademark Office.  *Id.* ¶ 25.  This patent

application claimed priority to the 2003 UK Patent Application, "as they are both directed to the

same invention."  *Id.*  In the 2005 U.S. Patent Application, defendant Harsley claimed that "the

notch 15 in the tie strip . . . was the patentable improvement over the tie strip disclosed in the

earlier '376 patent."  *Id.* ¶ 26.  This application issued in defendant Harsley's name as United

States Patent No. 7,704,587 ("'587 Patent") on April 27, 2010.  *Id.* ¶¶ 25, 27.  Defendant Harsley

assigned his ownership rights to the '587 patent to defendant Rapstrap.  *Id.* ¶ 28.

The plaintiff claims the notch, the "patentable improvement" in the '587 Patent, was

"invented by [the defendant], by himself or in collaboration with others, on or before June 10,

---

[3] The Complaint provides two different dates a month apart for when defendant Harsley's employment with the
plaintiff ended.  *Compare* Compl. ¶ 22 *with* ¶ 24.

2003, while employed by Millepede Marketing using tools and dies, and other resources, ultimately paid for by Millepede Marketing." *Id.* ¶ 31.

### D.     District Court Proceedings

On April 27, 2012, the plaintiff filed a Complaint against the defendants, Andrew Harsley and Rapstrap, in this Court alleging that (1) defendant Harsley breached an implied-in-fact contract requiring the assignment of his rights in the invention claimed in the '587 patent to the plaintiff, as his then employer, *id.* ¶¶ 32-33 (Count I); and (2) defendant Harsley, as the single largest shareholder of Millepede International Limited and as Technical Director of the plaintiff, breached a fiduciary duty by failing to assign his interest in the '587 patent to the plaintiff. *Id.* ¶¶ 37-38 (Count II).  As a remedy, the plaintiff seeks "a declaration that . . . the '587 patent is the property of Millepede Marketing and an order requiring Harsley and/or Rapstrap to execute an assignment to Millepede Marketing of all equitable and legal rights to the '587 patent." *Id*. ¶ 2.

Both defendants have moved, under Federal Rule of Civil Procedure 12(b)(1), to dismiss the complaint for failure to establish the subject matter jurisdiction of this Court.  Def. Harsley's Mot. to Dismiss, ECF No. 17; Def. Rapstrap's Mot. to Dismiss, ECF No. 14.

## II.     LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, No. 11-1118, 2013 U.S. LEXIS 1612, at *10 (Feb. 20, 2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Indeed, Federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir.

1996) (quoting *Herbert v. National Academy of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)).

Absent subject matter jurisdiction over a case, the court must dismiss it. *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must establish the court's jurisdiction over the subject matter by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Bolden-Bey v. U.S. Parole Comm'n*, 731 F. Supp. 2d 11, 13 (D.D.C. 2010) ("On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction"). When considering a motion under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal citations and quotation marks omitted). The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

## III.    DISCUSSION

The plaintiff maintains that this Court has jurisdiction under 28 U.S.C. § 1338(a) because the plaintiff's claims of breach of implied contract and breach of fiduciary duty will require resolution of substantial questions of federal patent law. [4] Pl.'s Opp'n at 3-4. The defendants

---

[4] The Complaint cites three statutory bases for subject matter jurisdiction: 28 U.S.C. §§ 1331, 1338(a), and 35 U.S.C. § 293. Compl. ¶ 7. With respect to two of these statutes, 28 U.S.C. § 1331 and 35 U.S.C. § 293, the plaintiff offers no substantive response to the defendants' contention that (1) the plaintiff pleads no claim arising under the Constitution, a federal law, or a treaty sufficient to invoke 28 U.S.C. § 1331; and (2) 35 U.S.C. § 293 does not

counter that the plaintiff's claims raise questions of state law and any patent law issues are not central to the resolution of these questions.  Def. Rapstrap's Reply Brief in Supp. of Mot. to Dismiss ("Def. Rapstrap's Reply"), ECF No. 21, at 2; Def. Harsley's Reply Brief in Supp. of Mot. to Dismiss ("Def. Harsley's Reply"), ECF No. 20, at 2.  Alternatively, the plaintiff argues that this Court has common law equity jurisdiction over the claims.  Pl.'s Opp'n at 10.  For the reasons explained below, the Court agrees with the defendants.  The plaintiff's arguments for subject matter jurisdiction are addressed *seriatim* below.

### A.      Subject Matter Jurisdiction under 28 U.S.C. § 1338

Congress has granted district courts original and exclusive jurisdiction of any civil action "arising under any Act of Congress relating to patents."  28 U.S.C. § 1338(a).  This jurisdictional grant does not extend, however, to "all questions in which a patent may be the subject-matter of the controversy."  *Gunn*, 2013 U.S. LEXIS 1612, at *23 (citing *New Marshall Engine Co. v. Marshall Engine Co.*, 223 U.S. 473, 478 (1912)).  In order to establish subject matter jurisdiction under this statute, the plaintiff must establish that "federal patent law creates the cause of action *or* that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pled claims."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (emphasis added) (outlining the two bases for subject matter jurisdiction under 28 U.S.C. §

---

independently confer subject matter jurisdiction.  Def. Rapstrap's Mem. at 4-6; Def. Harsley's Mem. at 3-5; *see also Nat'l Patent Dev. Corp. v. T.J. Smith & Nephew, Ltd.*, 877 F.2d 1003, 1009 (D.C. Cir. 1989) ("Section 293 does not supply subject matter jurisdiction").  The Court therefore considers the defendants' challenge to these two statutory bases for jurisdiction as conceded by the plaintiff.  *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, No. 09-2030, 2012 U.S. Dist. LEXIS 131788 (D.D.C. Sept. 17, 2012) ("Based on the absence of a meaningful response, the Court shall exercise its discretion to treat the argument that this theory is legally untenable as conceded.").  Thus, the Court assesses the only remaining basis cited for subject matter jurisdiction under 28 U.S.C. § 1338(a).

1338(a)).  As the Supreme Court recently made clear, "a case can 'aris[e] under' federal law in two ways."  *Gunn*, 2013 U.S. LEXIS 1612, at *11.  First, "when federal law creates the cause of action asserted," which covers a category of cases that "accounts for the vast bulk of suits that arise under federal law."  *Id*. at *12.  Second, in a "slim category" where the "claim finds its origins in state rather than federal law."  *Id*.  In this second category of cases, federal jurisdiction may be exercised over the state law claim when four requirements are met: "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Id*. at *13.  By contrast to claims that meet the "creation test," this second category admits jurisdiction in "only extremely rare exceptions."  *Id*. at *12.

With the Supreme Court's recent exegesis of "arising under" jurisdiction in 28 U.S.C. § 1338(a) as a guide, the Court now examines the plaintiff's claims.

### 1.     The Plaintiff's Claims Do Not Directly Arise Under Federal Law

At the outset, it cannot be disputed that the plaintiff does not directly assert any cause of action created under the federal patent laws.  Compl. ¶¶ 30-38.  Rather, the plaintiff seeks declarations that defendant Harsley breached an implied-in-fact contract with, and his fiduciary duty to, the plaintiff and that all ownership rights in the '587 Patent belong to the plaintiff; and an order requiring the defendants to assign the rights to the '587 Patent to the plaintiff.  *Id.*  Each claim for relief falls under contract law or employment law, not federal patent law.  Thus, the two claims (breach of implied contract and breach of fiduciary duty) brought by the plaintiff in this case clearly derive from state law.  *See Am. Tel. & Tel. Co. v. Integrated Network Corp.*, 972 F.2d 1321, 1324 (Fed. Cir. 1992) (holding that the breach of contract and breach of fiduciary duty claims relating to ownership of patent rights are governed by state law, not patent law);

*Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407 (Fed. Cir. 1996) (applying state law to an implied-in-fact contract claim).

Moreover, generally, claims regarding patent ownership are determined exclusively under state law, and are not governed by patent laws. *Gianelli v. Chirkes*, 204 Fed. App'x 24, 24 (D.C. Cir. 2006) (citing *Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1329 (Fed. Cir. 2001)); *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997). Contrary to the plaintiff's assertion that "implied-in-fact" contracts are resolved under patent law, Pl.'s Opp'n at 9-10, such claims arise entirely under state law. *Teets*, 83 F.3d at 407 ("As a matter of common law, after the Supreme Court's decision in *Erie Railroad v. Tompkins*, state contract principles provide the rules for identifying and enforcing implied-in-fact contracts.") (citation omitted).

In sum, the plaintiff's effort to shoehorn the disputed ownership of the '587 patent into a patent claim simply cannot convert its plain state law claims into a cause of action under the patent laws. Thus, for this Court to exercise subject matter jurisdiction over this case, the plaintiff must show that the two state-law claims at issue "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Gunn*, 2013 U.S. LEXIS 1612, at *13 (quoting *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). The Court next turns to the analysis of whether the state-law claims meet this test.

### 2. Plaintiff's State-Law Claims Do Not Meet Requirements For "Arising Under" Jurisdiction

Application of the four factors outlined in *Gunn v. Minton* to the instant state law claims demonstrates that "arising under" subject matter jurisdiction is not available here. As discussed in more detail below, while the parties may "actually dispute" a federal patent question, resolution of this question is not "necessary" to the outcome of this case and, in any event, is not a significant issue "to the federal system as a whole," *Gunn*, 2013 U.S. LEXIS 1612, at *16, *22, with the consequence that the exercise of federal jurisdiction is not warranted.

### a. Resolution of a Federal Patent Question is Not "Necessary"

The Supreme Court in *Gunn* explained that the first factor for federal jurisdiction over a state law claim to lie is that the federal patent issue must be "necessarily raised." *Id.* at *13. In that case, the Court found that application of patent law was a necessary part of a legal malpractice claim brought by a plaintiff, who was the losing party in a prior patent infringement action, since the plaintiff would have to show that he would have prevailed if his prior counsel had timely made a particular patent law argument on his behalf. *Id.* at *15, *24. Thus, the question of federal patent law must be a necessary element of the state-law claim, not simply necessary to one theory of relief. *See Christianson*, 486 U.S. at 810 (holding that it is not sufficient that "a well-pleaded claim alleges a single theory under which resolution of a patent-law question is essential"). In other words, if the merits of a state-law claim may be resolved without reaching or addressing a federal patent law issue, then the latter issue is not "necessarily raised," and the state-law claim falls outside the jurisdictional grant of 28 U.S.C. § 1338. *See id.* ("If . . . there are reasons completely unrelated to the provisions and purposes of the patent laws why the plaintiff may or may not be entitled to the relief it seeks, then the claim does not 'arise

under' those laws.") (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 26 (1983)) (internal citation and quotation mark omitted).

Thus, the Federal Circuit, which has exclusive responsibility for appellate review of patent cases, has consistently held that the mere presence of some patent law issue, or the fact that patent ownership lies at the center of the controversy, cannot of itself create the substantial question of federal patent law that is necessary for § 1338(a) jurisdiction. *Am. Tel. & Tel. Co.*, 972 F.2d at 1325 (finding that the district court lacked subject matter jurisdiction under § 1338(a) over the patent ownership dispute); *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277, 1280 (Fed. Cir. 2001) (finding that the district court did not have subject matter jurisdiction under § 1338(a) over case alleging misappropriation of proprietary information, breach of fiduciary duty, and breach of contract regarding preparation and filing of a patent application); *Consolidated World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed. Cir. 1987) (finding that the district court did not have subject matter jurisdiction under § 1338(a) over a contract dispute).

The plaintiff contends that two questions of patent law are "necessary" to resolve its claims that defendant Harsley has an implied contractual duty and fiduciary duty to assign all rights in the '587 Patent to the plaintiff: first, the identification of the invention in dispute, which requires a determination of whether the invention in the '587 Patent is "the same invention" to which it claimed priority in the 2003 UK Application; and, second, when defendant Harsley made the invention. Pl.'s Opp'n at 6-10. The defendants counter that these two patent law issues are neither central to the plaintiff's state law claims, nor necessary to resolve in order to determine the merits of the plaintiff's claims. Def. Harsley's Reply at 1-2; Def. Rapstrap's Reply at 1-2. The Court agrees with the defendants. While resolution of these patent questions may be helpful to the plaintiff's case, they are simply not necessary.

11

###### i.      The Question of Identifying the Invention

As noted above, the plaintiff argues that identifying the invention covered by the '587 Patent will require defining and comparing the invention in the '587 patent to the invention in the 2003 UK Patent Application.  Such comparison, according to the plaintiff, will establish that the invention in the '587 patent is the *same* as that in the 2003 UK Patent Application.  Yet, at the same time, the plaintiff also argues that the 2005 U.S. Patent Application for the '587 Patent "claimed priority" to the earlier 2003 UK Patent Application, which was filed by defendant Harsley while still employed by the plaintiff.  Compl. ¶¶ 23-25; Pl.'s Opp'n at 2, 6-7.  The import of the '587 Patent claiming priority to the 2003 UK Patent Application is that this fact may be used by the plaintiff as an admission by defendant Harsley that the inventions are the same in both.

A United States patent application may "claim priority" to an earlier-filed foreign application in order to benefit from the earlier date of the earlier foreign application when the "application for a patent [is] for the *same invention* in a foreign county."  35 U.S.C. § 119(a) (emphasis added); *see also Boston Scientific Scimed, Inc. v. Medtronic Vascular, Inc.*, 497 F.3d 1293, 1297 (Fed. Cir. 2007) ("while the foreign application *must obviously be for the same invention* and may be filed by someone other than the inventor, section 119(a) also requires that a nexus exist between the inventor and the foreign applicant at the time the foreign application was filed.") (emphasis supplied); *In re Gosteli*, 872 F.2d 1008, 1010 (Fed. Cir. 1989) ("Under section 119, the claims set forth in a United States application are entitled to the benefit of a foreign priority date if the corresponding foreign application supports the claims in the manner required by section 112.").  According to the plaintiff, in order for defendant Harsley to have listed the earlier UK application on the face of the '587 Patent as a foreign priority application, a

key condition had to be fulfilled, namely that "[t]he foreign application must be *for the same invention* as the application in the United States."  Pl.'s Opp'n at 7 (quoting The Patent Office's Manual of Patent Examining Procedure ("MPEP") § 201.13).  Thus, the plaintiff claims that "according to federal patent law, Harsley is deemed to have made 'the same invention as' the '587 patent on the June 10, 2003 filing date of his United Kingdom Patent Application No. 0313319.6."  Pl.'s Opp'n at 7.

Despite this probative evidence of claimed priority in hand, the plaintiff insists that a Federal court must nonetheless compare the 2003 UK Patent Application and the '587 Patent "[t]o *confirm* the priority claim, . . . and conclude that the former is in fact for the same invention as the latter."  Pl.'s Opp'n at 7 (emphasis added).  The Court is not persuaded that such an inquiry will be required.  Pursuant to section 119(a), if the '587 patent in fact claimed priority to the 2003 UK Patent Application, as the plaintiff alleges, then defendant Harsley conceded that the same invention was covered by both the application and the patent.  No analysis under federal patent law is required, and the limited inquiry into the similarity of the inventions covered by the application and patent may be resolved through an admission in the form of the claimed priority.

In any event, the question of whether both the 2003 UK Patent Application and the '587 patent define the same invention is not necessary to resolving the plaintiff's state-law claims. The plaintiff's theory is only one method of proof.  In other words, the plaintiff could establish when the invention in the '587 patent was made without requiring a comparison with the 2003 UK Patent Application.  For example, the plaintiff may be able to use documents and materials retained from defendant Harsley's employment at plaintiff to establish that he created the invention in the '587 patent during that employment.  Comparison of the invention in the '587

13

Patent to the 2003 UK Patent Application may provide a convenient method of proof, but is not necessary for relief.

The plaintiff relies heavily on *University of West Virginia, Board of Trustees v. VanVoorhies*, 278 F.3d 1288 (Fed. Cir. 2002), for its position that resolving a patent ownership dispute by comparing inventions can create a substantial question of patent law and establish subject matter jurisdiction under § 1338(a). Pl.'s Opp'n at 4-6. This reliance is misplaced. In *University of West Virginia*, the defendant inventor assigned his original patent ("'970 patent") to the university, as per the university's patent policy and this assignment extended to all "continuation-in-part" applications relating to the same invention. 278 F.3d at 1292. The inventor later filed a new patent application directed at a second invention, which he did not designate a "continuation-in-part" of the '970 patent. *Id.* at 1293. The university alleged that the second patent was a continuation-in-part of the original '970 patent, and therefore the inventor had breached his duty to assign the new patent to the university. *Id.* at 1294. The Federal Circuit found that jurisdiction under § 1338(a) was appropriate because the plaintiff's right to relief necessarily depended on resolving a substantial question of patent law, specifically, "whether the [new] application was a CIP [continuation-in-part] of the '970 application." *Id.* at 1295. This question was critical because the university could claim ownership under the assignment agreement *only* if the second patent was a "continuation-in-part" of the prior invention. *Id.* at 1293.

In contrast, here, defendant Harsley allegedly claimed priority in the '587 Patent to the earlier UK Patent Application, providing an obvious mechanism for the plaintiff to establish its ownership over the '587 patent without a comparison between the 2003 UK Patent Application and the '587 Patent. Additionally, the plaintiff has other potential evidentiary sources to prove

14

its claims.  Therefore, the plaintiff's "right to relief" does not depend on the comparison between the two patents, as did the plaintiff's right to relief in *University of West Virginia*.

###   ii.   The Question of When Defendant Harsley Made the Invention

The plaintiff also argues that the question of when the invention in the '587 patent was created would provide a basis of subject matter jurisdiction under § 1338(a).  Pl.'s Opp'n at 8.  Specifically, the plaintiff claims that the question of the "primary legal criteria" of conception and "reduction to practice" must be resolved to grant relief.  *Id.*  The Court disagrees.  This terminology and analysis are used in interference cases when priority of invention is disputed between multiple claimed inventors.  *See, e.g., Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 659 F.3d 1186 (Fed. Cir. 2011).  This case does not involve such claims or analysis.

In fact, the state-law claims in this case are closely analogous to those found insufficient to support "arising under" jurisdiction in *American Telephone & Telegraph Co. v. Integrated Network Corporation*.  In that case, AT&T asserted state-law claims against former employees for, *inter alia*, breaches of contract and fiduciary duty, and sought to obtain ownership rights to a United States Patent.  *Am. Tel. & Tel. Co.*, 972 F.2d at 1322.  Similarly to the instant case, AT&T's theory was rooted in the allegation that the invention in the employees' new patent had been created while the employees still worked for AT&T and they, therefore, had contractual and fiduciary duties to assign the rights in the patent to their former employer.  *Id.*  Thus, the *AT&T* case involved the same question that the plaintiff proffers to establish subject matter jurisdiction: namely, when was the invention created.  *Id.* at 1323.  In *AT&T*, the Federal Circuit found that AT&T's right to relief did not "necessarily depend[] on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims," and therefore the district court below did not have jurisdiction under § 1338(a).  *Id.* at 1324

15

(citation omitted).  This same reasoning applies to the instant matter.  The question of when the invention was created is a factual question that does not turn on any issue of federal patent law. Therefore, consideration of patent law is not necessarily raised by the ownership dispute over the '587 Patent.

### b.        The Remaining Factors

The failure of the plaintiff to establish that patent law questions must be necessarily raised to resolve the state-law claims at issue in this case is sufficient to deny subject matter jurisdiction.  Even if that first factor had been met, however, the plaintiff has not demonstrated that the other three factors are met.

As to the second factor, the parties certainly dispute the ownership of the '587 Patent, but the defendants' papers do not actually deny that the '587 Patent claimed priority to the 2003 UK Patent Application or assert any factual arguments regarding when the invention covered by the '587 Patent was created.  Rather, the defendants suggest that the real question is whether, under United Kingdom law, "Mr. Harsley's fiduciary duty obligated him to assign the Harsley patent to Millepede."  Def. Harsley's Reply at 4; Def. Rapstrap's Reply at 4 (same).  The lack of any direct response by the defendants to the two patent questions posed by the plaintiff regarding when the '587 Patent was created and its relationship to the 2003 UK Patent Application, makes it difficult to ascertain whether these questions are "actually disputed."  Given the probative value to the plaintiff's claims if these questions were conceded by the defendants, however, in the face of silence by the defendants, the Court would grant this factor to the plaintiff.[5]

---

[5] The Court notes that the Supreme Court's decision in *Gunn*, which delineated the four factors applicable to analysis of whether state-law claims "arise under" federal law, and thus satisfy the jurisdictional mandate of §1338(a), issued on February 20, 2013, after the briefing in this case.  No party to this case has filed any notice of additional authority since *Gunn* was decided.

Nevertheless, even if the patent law questions were assumed to be "actually disputed," they "are not substantial in the relevant sense." *Gunn*, 2013 U.S. LEXIS 1612, at *15. The Supreme Court explained that "it is not enough that the federal issue be significant to the particular parties in the immediate suit," but this factor "looks instead to the importance of the issue to the federal system as a whole." *Id*. at *16. In *Gunn*, the federal issue raised by the plaintiff regarding whether a patent law argument would have changed the result in his prior infringement action, was critical to establishing his legal malpractice claim, and the Supreme Court acknowledged the importance of this issue to the claim. The Supreme Court concluded, however, that the "hypothetical" federal issue was not "significant to the federal system as a whole," *id*. at *22-23, because the status of the patent at issue would not change and "will remain invalid," *id*. at *18, and the resolution of the federal issues would have no "broader significance," *id*. at *17, or "broader effects," *id*. at *24, in terms of application to other cases or federal interests, *id*. at *16-22. Similarly, here, the outcome of the state-law claims will not alter the status of the '587 Patent, only its ownership, which will be dependent on the "fact-bound and situation-specific" circumstances between the parties that "are not sufficient to establish federal arising under jurisdiction." *Id*. at *21 (internal quotations and citation omitted).

Finally, in the absence of a substantial federal issue, the "fourth requirement is also not met." *Id*. at *22. The exercise of federal jurisdiction would therefore disrupt the appropriate balance of federal and state judicial responsibilities over state-law claims.

The plaintiff has not and cannot satisfy the four requirements for federal arising under jurisdiction and therefore this Court does not have subject matter jurisdiction under 28 U.S.C. § 1338(a).

### B.      Common Law Equity Jurisdiction

The plaintiff argues that, even if this Court finds it does not have subject matter jurisdiction over this matter under 28 U.S.C. § 1338(a), it should exercise common law equity jurisdiction over the case.  Pl.'s Opp'n at 10.  The defendants disagree, arguing in response that common law equity jurisdiction over patent law cases was overridden by the Supreme Court in *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988), and is no longer a viable basis for subject matter jurisdiction.  Def. Harsley's Reply at 5-6; Def. Rapstrap's Reply at 5-6.

The Court agrees with the defendants that common law equity jurisdiction does not support hearing the plaintiff's claims.  In *Christianson*, the Supreme Court extensively discussed subject matter jurisdiction over patent cases under 28 U.S.C. § 1338(a), but never mentioned any potential "fall-back" jurisdiction for district courts under common law equity jurisdiction, as the plaintiff suggests.  486 U.S. 800 (1988).  Similarly, in *Gunn*, the Supreme Court emphasized the limited nature of federal courts' jurisdictional grant under § 1338(a) to hear state-law claims. As the defendants highlight, the fact that "common law equity jurisdiction has not been used in a published decision in this Court in more than 50 years," is telling.  Def. Harlsey's Reply at 5; Def.'s Rapstrap's Reply at 5.

Indeed, the last reported case from this Court to refer to common law equity jurisdiction as the jurisdictional basis to resolve the ownership of patents is *North Branch Products, Inc. v. Fisher*, 284 F.2d 611 (D.C. Cir. 1960), which is relied upon by the plaintiff.  There, the D. C. Circuit acknowledged the "special grants of jurisdiction in the area of patents" under § 1338(a), but noted that this statute "is immaterial if, as we think is true, the allegations being [sic] the case within the equity jurisdiction of the court aside from that provision."  *Id*. at 614 n.7.

At the time this case was decided, however, the United States District Court for the

District of Columbia had concurrent jurisdiction with the local courts. *Montecatini Edison, S.P.A. v. Ziegler*, 486 F.2d 1279, 1288-89 (D.C. Cir. 1973) (explaining prior District of Columbia statute, D.C. Code § 11-306 (1961), which provided "that the District Court here shall have cognizance of all cases in law and equity between parties") (internal quotation mark and citations omitted). It was not until 1971, after the Congress reorganized the courts of the District of Columbia with passage of the District of Columbia Court Reorganization Act, Pub. L. No. 91-358, 84 Stat. 475, 667, that "the relationship of the federal to the local judiciary was to be akin to that historically existent in the states." *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1122 (D.C. Cir. 2004). As a consequence, the *North Branch* court "did have subject matter jurisdiction: in those pre-District of Columbia Court Reorganization Act days, the district court served as a general trial court for the District of Columbia, and so had common law and equity jurisdiction much like that of a state court of general jurisdiction." *Nat'l Patent Dev. Corp. v. T.J. Smith & Nephew, Ltd.*, 877 F.2d 1003, 1009 (D.C. Cir. 1989). Those days are long over, and the *North Branch* case has, consequently, been relegated to the dust bin of a bygone era.

The plaintiff's contention that federal courts have common law equity jurisdiction over patent matters is simply wrong, because this legal theory would allow "the district court to intrude on the domain of state courts by asserting jurisdiction over what were, in essence, contract disputes," and also allow federal courts to avoid their "normal subject matter competence requirements." *Id*.

The plaintiff also points to *Kennedy v. Wright*, 676 F. Supp. 888 (C.D. Ill. 1988), as support for the continued viability of common law equity jurisdiction over cases relating to patents in district courts. Pl.'s Opp'n at 10. Although the district court in that case cited only *North Branch* for its reliance on common law equity jurisdiction as a basis for subject matter

jurisdiction, the court failed to note the unique concurrent jurisdiction of federal courts within the District of Columbia at the time of the *North Branch* decision.  Furthermore, on appeal of the *Kennedy v. Wright* decision, the Seventh Circuit relied solely upon 28 U.S.C. § 1338.  *Kennedy v. Wright*, 851 F.2d 963, 964 (7th Cir. 1988) ("The jurisdiction of the district court was based 'in whole' on § 1338.").  The Seventh Circuit then transferred the case to the Federal Circuit, which has appellate jurisdiction over final decisions of district courts acting under § 1338 subject matter jurisdiction, and the Federal Circuit accepted appellate review of the case based upon this jurisdictional predicate, not common law equity jurisdiction.  *Kennedy v. Wright*, No. 88-1504, 1989 U.S. App. LEXIS 1106 (Fed. Cir. Jan. 26, 1989).  Thus, the district court decision in *Kennedy v. Wright* is simply not helpful to the plaintiff.

As stated above, the Court holds that, absent a constitutional or statutory grant of authority for this Court of limited jurisdiction to hear a patent case, common law equity jurisdiction is not a viable alternative basis for the exercise of jurisdiction.  In any event, reliance on a resuscitated theory of common law equity jurisdiction would not warrant the exercise of Federal jurisdiction to hear the instant case among United Kingdom parties over the disputed ownership of a U.S. Patent, where the allegations stem from a former employment relationship that occurred entirely in the United Kingdom.

IV.   **CONCLUSION**

Under 28 U.S.C. § 1338(a), this Court has subject jurisdiction over this case only if the claims "aris[e] under" the federal patent laws, such that the federal patent laws create the cause of action, or the claims necessarily require resolution of an actually disputed and substantial issue of federal patent law that is properly resolved in a federal court.  28 U.S.C. § 1338(a); *Gunn*, 2013 U.S. LEXIS 1612, at *13; *Christianson*, 486 U.S. at 809-10.  Since the state-law

claims asserted here do not necessarily raise patent law questions, nor meet other prerequisites for the exercise of arising under jurisdiction, this Court is without subject matter jurisdiction. Accordingly, for the reasons stated above, the defendants' motions to dismiss for lack of subject matter jurisdiction are GRANTED.

An appropriate Order accompanies this Memorandum Opinion.

**Date:** March 7, 2013

_____
BERYL A. HOWELL
United States District Judge